IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

OVIDIU F.[1]

Plaintiff,

v.

COMMISSIONER SOCIAL SECURITY ADMINISTRATION,

Defendant.

Case No. 6:25-cv-02122-SB

**OPINION AND ORDER**

**BECKERMAN, U.S. Magistrate Judge.**

Ovidiu F. ("Plaintiff") filed this appeal challenging the Commissioner of the Social Security Administration's ("Commissioner") denial of his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). For the reasons explained below, the Court concludes that the Commissioner's decision is free of harmful legal error and supported by substantial evidence in the record.

///

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the non-governmental party.

## STANDARD OF REVIEW

"As with other agency decisions, federal court review of social security determinations is limited." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). A federal court's review is limited because "[f]or highly fact-intensive individualized determinations like a claimant's entitlement to disability benefits, Congress places a premium upon agency expertise, and, for the sake of uniformity, it is usually better to minimize the opportunity for reviewing courts to substitute their discretion for that of the agency." *Id.* (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 621 (1966)). Adhering to this principle, courts "follow three important rules" in reviewing social security determinations. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).

First, courts "leave it to the [agency] to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Id.* (quoting *Treichler*, 775 F.3d at 1098). Second, courts "will 'disturb the Commissioner's decision to deny benefits only if it is not supported by substantial evidence or is based on legal error.'" *Id.* (quoting *Treichler*, 775 F.3d at 1098). Third, if the agency "'commits legal error, [courts] uphold the decision where that error is harmless,' meaning that 'it is inconsequential to the ultimate nondisability determination,' or that, despite the legal error, 'the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity.'" *Id.* (quoting *Treichler*, 775 F.3d at 1098); *see also Smith v. Kijakazi*, 14 F.4th 1108, 1111 (9th Cir. 2021) ("And even where this modest [substantial evidence] burden is not met, [courts] will not reverse an [agency] decision where the error was harmless." (citing *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by regulation as recognized in Farlow v. Kijakazi*, 53 F.4th 485, 487 (9th Cir. 2022))).

///

## BACKGROUND

### I. PLAINTIFF'S APPLICATION

Plaintiff was thirty-nine years old on November 14, 2021, his alleged disability onset date. (Tr. 6-3, 20.) Plaintiff has at least a high school education and "four or more years of college." (*Id.* at 6-7, 218.) His past relevant work experience extends from 2006 to 2021 in auditing, customer service, and project management. (*Id.*) In his DIB application, Plaintiff alleges disability due to a "malignant neoplasm of frontal lobe" and "gemistocytic astrocytoma." (*Id.* at 211.) He also alleges that he has "chronic fatigue syndrome, post-concussive syndrome, brain fog, visual hallucinations, irritability, social withdrawal, attention deficit disorder, anxiety, and depression." (*Id.* at 6-3, 21.)

The Commissioner denied Plaintiff's application initially and upon reconsideration, and on October 23, 2023, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.*) On July 17, 2024, Plaintiff, along with his counsel of record and an impartial vocational expert ("VE"), testified at a telephonic hearing before an ALJ. (*Id.*) On August 19, 2024, the ALJ issued a decision denying Plaintiff's application. (*Id.* at 17.) The Appeals Council denied Plaintiff's request for review on June 16, 2025, making the ALJ's decision the final decision of the Commissioner. (*Id.* at 6.) Plaintiff now seeks judicial review of that decision.

### II. THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than [twelve] months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011) (citation

omitted). Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 724-25.

To establish a "prima facie case of a disability," a claimant must demonstrate "at steps one through four of the sequential evaluation process that she suffers from a severe impairment that prevents her from doing any work she has done in the past, or that she has a severe impairment and has no relevant past work[.]" *White v. Kijakazi*, 44 F.4th 828, 833 (9th Cir. 2022) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). If the claimant does so, "[t]he burden then shifts to the Commissioner at step five to establish that the claimant can perform a 'significant number[]' of jobs in the national economy given the claimant's physical and mental limitations, age, education, and work experience." *Id.* (first quoting 20 C.F.R. § 416.960(c)(2); and then citing *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002)). "If the Commissioner meets [his] burden, the claimant has failed to establish disability." *Thomas*, 278 F.3d at 955 (simplified).

## III. THE ALJ'S DECISION

The ALJ applied the sequential evaluation process to determine if Plaintiff is disabled. (Tr. 6-3, 20-40.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 14, 2021. (*Id.* at 23.) At step two, the ALJ found that Plaintiff suffered from the severe impairment of "a neurocognitive disorder status-post sub-total resection of a brain neoplasm." (*Id.*) At step three, the ALJ determined that the Plaintiff did not have an impairment that met or equaled a listed impairment. (*Id.* at 24.)

///

The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform light work, subject to the following exceptions and limitations: (1) Plaintiff can occasionally lift twenty pounds, (2) Plaintiff can frequently lift ten pounds, (3) Plaintiff "can sit six hours, stand six hours and walk six hours in an [eight]-hour workday," (4) Plaintiff "can occasionally, stoop, kneel, crouch and crawl, but can never climb ladders, ropes or scaffolding at work," (5) Plaintiff "can also perform work that does not require exposure to hazards, such as work at unprotected heights or operating motor vehicles," (6) Plaintiff can mentally "perform simple tasks and can exercise proper judgment in performing those tasks," and (7) Plaintiff "can respond appropriately to routine changes in the workplace." (*Id.* at 26.) At step four, the ALJ found that Plaintiff was unable to perform his past relevant work. (*Id.* at 39.) At step five, the ALJ found that Plaintiff was not disabled because a significant number of jobs existed in the national economy that he could perform, including work as a fast-food worker and housekeeper with light duties. (*Id.* at 41.)

## DISCUSSION

In this appeal, Plaintiff argues that the ALJ erred by failing properly to evaluate Dr. Bahareh Talei's ("Dr. Talei") medical opinion. (Pl.'s Opening Br. at 1, ECF No. 14.) The Court finds that the Commissioner's decision is free of harmful legal error and supported by substantial evidence in the record. The Court therefore affirms the Commissioner's decision.

## I. MEDICAL OPINION EVIDENCE

### A. Applicable Law

"In January 2017, the Social Security Administration issued revised regulations for evaluating medical opinions relating to claims filed on or after March 27, 2017." *Cross v. O'Malley*, 89 F.4th 1211, 1214 (9th Cir. 2024) (citing Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017) (codified at 20 C.F.R. pts.

404 & 416)). The revised "regulations provide that ALJs will no longer 'defer or give any specific evidentiary weight' to any medical opinion." *Id.* (quoting 20 C.F.R. § 416.920c(a)). Instead, "ALJ[s] must assess the persuasiveness of each medical opinion after considering specified factors." *Stiffler v. O'Malley*, 102 F.4th 1102, 1106 (9th Cir. 2024) (first citing *Woods v. Kijakazi*, 32 F.4th 785, 791-92 (9th Cir. 2022); and then citing 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(b)).

Specifically, the revised "regulations require an ALJ to discuss the supportability and consistency of medical evidence—the factors the agency has historically found to be the most important in evaluating medical opinions—while allowing for discussion of other factors listed in paragraphs (c)(3) through (c)(5), as appropriate." *Cross*, 89 F.4th at 1215 (citing 20 C.F.R. § 416.920c(a)); *see also Woods*, 32 F.4th at 791 ("'The most important factors' that the agency considers when evaluating the persuasiveness of medical opinions are 'supportability' and 'consistency.'" (quoting 20 C.F.R. § 404.1520c(a))). "Supportability focuses on whether 'a medical source supports a medical opinion by explaining the relevant objective medical evidence.'" *Stiffler*, 102 F.4th at 1106 (quoting *Woods*, 32 F.4th at 791-92); *see also Kitchen v. Kijakazi*, 82 F.4th 732, 740 (9th Cir. 2023) ("Supportability concerns how 'a medical source supports a medical opinion' with relevant evidence[.]" (quoting *Woods*, 32 F.4th at 791-92)). "Consistency means the extent to which a medical opinion is consistent with the evidence from other medical sources and nonmedical sources[.]" *Stiffler*, 102 F.4th at 1106 (quoting *Woods*, 32 F.4th at 792).

In addition to supportability and consistency, "[a]n ALJ may discuss other factors [listed in paragraphs (c)(3) through (c)(5)], such as the medical source's 'relationship with the claimant' or 'specialization,' but generally has no obligation to do so." *Cross*, 89 F.4th at 1214 (citing 20

C.F.R. § 416.920c(b)(2)). If, however, an ALJ concludes that "two or more contradictory medical opinions 'both equally well-supported . . . and consistent with the record[,]' . . . the regulations mandate discussion of these other factors." *Id.* at 1214 (quoting 20 C.F.R. § 416.920c(b)(3), (c)(3)-(5)).

Where, as here, the new regulations apply, a district court reviews the ALJ's evaluation of a medical opinion for substantial evidence. *See Woods*, 32 F.4th at 787 ("For claims subject to the new regulations, . . . an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence."); *id.* at 792 ("Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence."); *Metcalf v. Kijakazi*, No. 22-35201, 2022 WL 17592194, at *1 (9th Cir. Dec. 13, 2022) (observing that "under the revised regulations . . . , the ALJ's evaluation of a medical opinion is reviewed for substantial evidence" (citing *Woods*, 32 F.4th at 789)); *see also Stiffler*, 102 F.4th at 1108 ("In sum, the ALJ's evaluation of [the physician's] medical opinion is supported by substantial evidence.").

**B. Analysis**

Plaintiff argues that substantial evidence does not support the ALJ's determination that Dr. Talei's opinion was unpersuasive and lacking in support. (Pl.'s Opening Br. at 3.)

**1. Dr. Talei's Opinion**

On April 10 and 15, 2024, Dr. Talei performed a Cognitive Functional Evaluation ("CFE") of Plaintiff, at his request, over Zoom. (Tr. 6-7, 302.) The CFE encompassed administration of the Reynolds Intellectual Assessment Second Edition ("RIAS-2"), the Wisconsin Card Sorting Test 64 Card Version ("WCST-64"), and the Structured Inventory of

Malingered Symptomatology ("SIMS") exam. (*Id.* at 307-10.) Prior to the CFE, Dr. Talei reviewed Plaintiff's medical records and history. (*Id.* at 302.)

On the RIAS-2, Dr. Talei's clinical observation was that Plaintiff exhibited "borderline impairment" of his nonverbal intelligence and "profound impairment" of his composite memory. (*Id.* at 307.) Dr. Talei also found that Plaintiff scored within the "profoundly impaired range" in the "nonverbal memory" subtest, which "assesses for one's ability to encode, briefly store, and recall information in the nonverbal and spatial domains." (*Id.* at 308.)

On the WCST-64, Dr. Talei's clinical observation was that Plaintiff's responses indicated "notable impairment . . . in Perseverative Responses and Errors, Nonperseverative Errors, and Conceptual Level Responses" which "suggest difficulty in shifting cognitive strategies and adapting to new rules." (*Id.* at 309.)

Finally, on the SIMS, Dr. Talei's clinical observations were that Plaintiff exhibited evidence of elevated malingering in areas of neurological impairment, amnestic disorders, and affective disorders. (*Id.*) Within the "amnestic disorders" section, Dr. Talei noted that Plaintiff's elevated score was "not due to feigning but due to notable cognitive impairment (e.g. extreme fatigue and concentration impaired by unrelenting severe pain, headaches) as each item was reviewed by the clinician." (*Id.* at 309-10.) Additionally, Dr. Talei noted that within the "affective disorders" scale, Plaintiff's "symptoms (e.g. unrelenting severe pain, headaches) were reviewed by the clinician and deemed accurate without any indication of malingering." (*Id.* at 310.)

Dr. Talei's conclusions from the CFE were that Plaintiff "suffers from definitive cognitive deficits attributed to his condition" and that those deficits "would interfere with and inhibit his ability to perform as a Senior Business Project Manager and any similar occupation

with consistency, accuracy, and efficacy" such that he "does not possess the required cognitive capacity for work at this time." (*Id.* at 311.)

**2. The ALJ's Decision**

The ALJ found Dr. Talei's opinion unpersuasive in light of the record evidence suggesting that Plaintiff had made "intentional efforts to fatigue himself prior to [Dr. Talei's] testing." (Tr. 32.) Specifically, the ALJ noted that Plaintiff "reported to Rhanda Kucey ("Kucey")[2] in May 2024 that [Dr. Talei] had noticed his fatigue and irritable mood during testing" but that "[Dr. Talei's] report will 'work for [his] lawyer.'" (*Id.*) Further, the ALJ noted that Plaintiff had stated to Kucey that "he had such significant deficits on [Dr. Talei's] testing because he had 'done some exercises before [the testing] to fatigue [himself].'" (*Id.*) After securing Dr. Talei's updated neuropsychological assessment, Plaintiff's activity levels increased. (*Id.*)

**3. Disposition**

The Court finds that substantial evidence supports the ALJ's discounting of Dr. Talei's opinion as unpersuasive.

It is important to consider at the outset that "the threshold for [substantial] evidentiary sufficiency is not high." *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021) (quoting *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019)). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*; *cf. Chen v. Bisignano*, No. 25-3588, 2026 WL 1427028, at *1-2 (9th Cir. May 21, 2026) ("Substantial evidence requires 'more than a mere scintilla' of evidence but does not require more than 'such relevant evidence

---

[2] In the ALJ's decision, this name is spelled "Rhanda Kucey," but in documents including Kucey's electronic signature, the spelling is "Randa." (*See, e.g.*, Tr. 7-3, 6059.)

as a reasonable mind might accept as adequate to support a conclusion' when considering the entire record.") (citation omitted).

This is significant because "[u]nder the revised regulations, an ALJ need only provide 'an explanation supported by substantial evidence.'" *Kitchen*, 82 F.4th at 740 (quoting *Woods*, 32 F.4th at 792). To do so, the "ALJ 'must articulate how persuasive it finds all of the medical opinions from each doctor or other source[] and explain how it considered the supportability and consistency factors in reaching these findings.'" *Stiffler*, 102 F.4th at 1106 (quoting *Woods*, 32 F.4th at 792). Consistency concerns the extent to which a "medical opinion is consistent with the evidence from other medical and nonmedical sources," *Kitchen*, 82 F.4th at 740 (quoting *Woods*, 32 F.4th at 792), and "[s]upportability focuses on whether 'a medical source supports a medical opinion by explaining the relevant objective medical evidence.'" *Stiffler*, 102 F.4th at 1106 (quoting *Woods*, 32 F.4th at 791-92); *see also Kitchen*, 82 F.4th at 740 ("Supportability concerns how 'a medical source supports a medical opinion' with relevant evidence.") (simplified).

In this case, the ALJ did not err in discounting Dr. Talei's opinion because the ALJ "provided specific, cogent reasons related to the lack of 'consistency' and 'supportability' of the rejected evidence." *Phillips v. Bisignano*, No. 24-6711, 2025 WL 3090746, at *1 (9th Cir. Nov. 5, 2025) (first quoting 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b); and then citing *Woods*, 32 F.4th at 791-92). Specifically, the ALJ explained his reasons for discounting Dr. Talei's assessment, including that Dr. Talei's findings that Plaintiff was "moderately limited in his ability to interact with others" were primarily based on Plaintiff's self-reported symptoms and the record evidence reflected that Plaintiff had intentionally fatigued himself prior to testing. (Tr. 32.) The ALJ found that "[b]y comparison, when not intentionally fatiguing himself and after securing [Dr. Talei's] updated neuropsychological assessment, the Plaintiff now reports he can

drive longer, can climb stairs at Skinner Butte, plays video games for an hour at a time, has improving memory and is making travel plans with his girlfriend without any changes in care to account for his improvement," which the ALJ found to be evidence suggesting that Plaintiff's "symptoms only suddenly declined prior to [Dr. Talei's] cognitive testing because the claimant engaged in activities involving greater physical and mental demands than those the undersigned has established for him in this decision since his onset date." (*Id.*) Thus, the ALJ adequately explained why he concluded that Dr. Talei's opinion was not supported by the record and substantial evidence supported the ALJ's discounting of Dr. Talei's opinion.

For these reasons, the Court finds that the ALJ did not err in evaluating Dr. Talei's opinion.[3]

## CONCLUSION

For the reasons stated, the Court AFFIRMS the Commissioner's decision because it is free of harmful legal error and supported by substantial evidence in the record.

**IT IS SO ORDERED.**

DATED this 21st day of October 2026.

HON. STACIE F. BECKERMAN
United States Magistrate Judge

[3] The Commissioner correctly notes (*see* Def.'s Br. at 6-7, ECF No. 16) that Plaintiff did not challenge the ALJ's analysis of the consistency of Dr. Talei's opinion and therefore waived any such argument. *See, e.g.*, *Nadon v. Bisignano*, 145 F.4th 1133, 1138 (9th Cir. 2025) (finding that because "[the plaintiff] failed to acknowledge these additional reasons, and therefore also failed to challenge the ALJ's reliance on them, the Commissioner was correct to assert that [the plaintiff] forfeited the argument that the ALJ did not provide sufficient reasons for discounting the opinions of the healthcare professionals"); *see also Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (declining to address an ALJ's reasons for rejecting a claimant's assertions when the claimant "failed to argue th[e] issue with any specificity in his briefing").